IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Wygant,                          :
                                       :
                    Petitioner         :
                                       :
            v.                         : No. 546 C.D. 2022
                                       : Submitted: October 10, 2023
Kebert Construction (Workers'          :
Compensation Appeal Board),            :
                                       :
                    Respondent         :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ELLEN CEISLER, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: January 29, 2024


            James Wygant (Claimant) petitions for review of the order of the
Workers' Compensation Appeal Board (Board) affirming the order of the Workers'
Compensation Judge (WCJ) that granted the petition to modify (Modification
Petition) filed by Kebert Construction (Employer) and denied Claimant's penalty
petition (Penalty Petition).  Claimant argues that the Board erred in affirming the
WCJ's decision granting Employer's Modification Petition based on a labor market
survey (LMS) because he was unable to do any of the jobs identified in the survey.
Claimant also argues that the Board erred in affirming the WCJ's decision denying

his Penalty Petition when Employer failed to pay medical bills incurred for implanting a spinal cord stimulator. We affirm.

The relevant background provided by the WCJ and the Board is as follows.[1] Claimant sustained a work injury on December 14, 2014, while he was employed by Employer as a mechanic. The injury was recognized as a low back strain, and Claimant received weekly benefits based on an average weekly wage of $694.47, resulting in a weekly compensation rate of $466.00, for total disability. Employer filed the Modification Petition and a petition to suspend (Suspension Petition) on August 16, 2017, based on an LMS. Claimant filed a review petition on September 6, 2017, seeking to expand the description of the injury to include aggravation of preexisting lumbar spondylolisthesis, lumbar root disorder, and sacrococcygeal disorders. Claimant filed a second review petition (together, Review Petitions) on November 1, 2017, seeking to expand the description of the injury to include reflex sympathetic dystrophy (RSD)/complex regional pain syndrome (CRPS).[2] On April 27, 2018, Claimant filed the Penalty Petition asserting that Employer refused to approve and pay for a spinal cord stimulator in violation of the Workers' Compensation Act (Act).[3] WCJ's Opinion, 11/16/21, at 4. The WCJ held eight hearings from 2017-2021, during which he received and considered

---

[1] The WCJ's Opinion, November 16, 2021, may be found in the Certified Record (C.R.), Item No. 21. On June 16, 2022, this Court granted Claimant's application to proceed *in forma pauperis* and excused Claimant from filing a reproduced record in this appeal.

[2] Throughout the WCJ's Opinion, RSD and CRPS are sometimes used separately, and sometimes together, to describe Claimant's condition. RSD is apparently an older term used to describe one form of CRPS. Both RSD and CRPS are chronic conditions characterized by severe burning pain, most often affecting one of the extremities. Here, RSD/CRPS describes Claimant's pain in his legs and feet.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

2

voluminous exhibits and testimony. In a decision and order circulated on November 16, 2021, the WCJ partially granted Claimant's Review Petitions, granted Employer's Modification Petition, denied Employer's Suspension Petition, and denied Claimant's Penalty Petition. Board Opinion, 5/6/22, at 2.[4] Claimant and Employer appealed to the Board, which affirmed the WCJ's decision.[5]

At the hearings before the WCJ, Claimant presented his own testimony, testimony and reports from his treating neurosurgeon, Dr. Avery Buchholz (Dr. Buchholz), and testimony from his treating physician for rehabilitation and pain management, Dr. Eric Helm (Dr. Helm).[6] The WCJ reopened the record at Claimant's request and over Employer's objection, and also considered the independent medical exam (IME) report from Dr. Sabino D'Agostino (Dr. D'Agostino).

Employer presented the reports and deposition testimony from its chosen physician, Dr. Thomas Kramer (Dr. Kramer), a board-certified orthopedic surgeon, who examined Claimant on three occasions and prepared three IME reports dated March 8, 2016, June 30, 2017, and February 28, 2018. Employer also presented the deposition testimony of Jim DeMartino (Mr. DeMartino), an approved vocational rehabilitation consultant who performed the LMS for Claimant in 2017.

---

[4] The Board Opinion, May 6, 2022, may be found in the Certified Record, Item No. 26.

[5] Employer did not appeal the denial of the Suspension Petition to the Board. Because the Board did not disturb the Modification Petition, it dismissed as moot Employer's protective appeal on the Modification Petition. Neither Claimant nor Employer appealed the partial granting of the Review Petitions to the Board.

[6] Claimant also presented testimony from his grandmother, Dorothy Fornof, a retired nurse, who accompanied Claimant to two appointments with Dr. Thomas Kramer, the orthopedic surgeon who conducted three independent medical examinations (IMEs) on behalf of Employer. The WCJ did not credit or discuss Ms. Fornof's testimony, and we need not discuss it further.

3

Employer also presented testimony, reports, and video from its private investigator Brett Harty (Mr. Harty), who performed surveillance of Claimant at Employer's request.

The WCJ summarized Claimant's testimony, in relevant part, as follows. Claimant recounted his work injury, his spinal surgery in 2015, and the pain sensations he experienced in his leg after surgery. Claimant participated in physical therapy and attempted to have a spinal cord stimulator implanted, which was unsuccessful, because Claimant could not tolerate the pain associated with the procedure. Claimant testified that the pain in his legs and feet made it difficult for him to wear shoes and long pants, and that he wore shorts and flip flops because they were less painful. Claimant moved from Pennsylvania to South Carolina in 2016 because he felt the warmer weather was more conducive to wearing shorts and flip flops. Claimant did not receive any treatment in South Carolina from 2016-2017, until he began treating with Dr. Buchholz, who determined that several screws from his 2015 spinal surgery had broken, which Dr. Buchholz repaired during a second spinal surgery in 2017. Dr. Buchholz also recommended that Claimant try again to receive a spinal cord stimulator. Another physician successfully implanted a spinal cord stimulator in 2018 in South Carolina, after which Claimant experienced 80% relief from his back and leg pain. Claimant testified that he was able to walk short distances, drive a car, perform chores around the house, and work five or six hours per day if he could sit and stand as needed, and if he could wear shorts and flip flops. Claimant testified that he still gets patches of discoloration or "mottling" in his foot and legs, and experiences pains like a "Charley horse" after doing physical activity, which last from a few seconds to a few minutes, before they go away. Claimant testified that he wants to work but feels that his options are limited because of the

4

leg pains that come and go, and because of his need to wear flip flops and shorts. WCJ's Opinion at 4-5, 9-12. Claimant further testified before the WCJ on November 5, 2018, during which Claimant acknowledged his improvement following his second spinal surgery and the implantation of the spinal cord stimulator. Claimant testified that, at that time, although he could not wear a sock on his left foot at all, he could wear shoes for about an hour at a time, and that he could now tolerate wearing pants. *Id.* at 10.

Claimant also testified about the job openings sent to him by Mr. DeMartino in 2017. Claimant testified that he received a total of eight job listings in August 2017, located phone numbers for each, contacted them, and discovered that four of the positions had already been filled. Of the four remaining listings, Claimant testified that he was not suited to three of them, either because he would have to wear pants and shoes, lacked the necessary experience, or could not perform the lifting demands of the job. The remaining position, for a customer service representative at UniFirst (UniFirst position), was available, but Claimant testified that the person he spoke with told him that he lacked the necessary sales experience. Claimant acknowledged that he had worked at UniFirst earlier in his career in a different position. Claimant also testified that he applied for two jobs on his own in South Carolina, one as a tow truck driver and another as a motorcycle mechanic, but he was turned down. WCJ's Opinion at 4-5.

Dr. Buchholz, Claimant's treating neurosurgeon in South Carolina, testified in relevant part as follows. Dr. Buchholz specializes in treating spinal conditions, but he is not yet board certified. He first treated Claimant in August 2017, in South Carolina for chronic back and leg pain. He acknowledged Claimant's first (at that time) spinal surgery and the broken screws in Claimant's spine. As of

September 2017, Dr. Buchholz acknowledged that RSD was part of Claimant's differential diagnosis, but he did not diagnose Claimant as suffering from RSD because that was not his field of expertise. Dr. Buchholz recommended and performed Claimant's second spinal surgery to repair the broken screws on October 2, 2017, which was needed as a direct result of the first failed back surgery. Following the second spinal surgery, Claimant reported he was doing well and had no more leg pain. Some of Claimant's leg pain returned after the surgery, and Dr. Buchholz noted intermittent mottling on Claimant's legs. Dr. Buchholz opined that, following the surgery, Claimant would be limited to lifting 25 pounds for the first month after surgery, and 50 pounds after the second month, with no lifting restrictions beyond 2 months. Dr. Buchholz opined that Claimant's spine was structurally sound following the surgery, and that he could work as tolerated, speaking from the point of view of his spinal injury. Dr. Buchholz was not aware of Claimant's first failed attempt at a spinal cord stimulator, and referred Claimant to Dr. Nathan Roland for a spinal cord stimulator as an option to relieve Claimant's leg pains. Dr. Buchholz agreed that Claimant's symptoms of mottling and hypersensitivity to touch on his legs were unusual in that they did not follow any specific pattern, and he was unable to explain the mottling. WCJ's Opinion at 12-13.

Dr. Helm, Claimant's treating physician for rehabilitation and pain management, saw Claimant in 2015-2016 in Pennsylvania, and again, in 2018, when Claimant returned briefly to Pennsylvania from South Carolina. Dr. Helm testified, in relevant part, about Claimant's recovery from the first spinal surgery and the treatment for Claimant's back and leg pains following that surgery. At that time, Dr. Helm was concerned that Claimant could have CRPS, based on the objective signs

6

of mottling and some swelling in the legs, with the remainder of the symptoms of CRPS based on Claimant's subjective complaints. Dr. Helm recommended a spinal cord stimulator in 2016, which Claimant could not tolerate, and it was not implanted. Claimant returned for examination in 2018, after his second spinal surgery to repair the broken screws. Dr. Helm reported that Claimant improved after the spinal cord stimulator was successfully implanted in South Carolina, but he was not back to 100%. Dr. Helm observed that Claimant did well for a time after the second spinal surgery, but he developed sensitivity, pain, and mottling in his legs, which was worse on the left leg. At the 2018 examination, Dr. Helm diagnosed Claimant with CRPS in his lower extremities as well as post-surgical pain syndrome, which Dr. Helm opined was present in January 2016, and was still present in October 2018. Dr. Helm opined that Claimant's CRPS was a result of the work injury. Dr. Helm disagreed with the opinion of Dr. Kramer, Employer's physician who performed three IMEs, over whether Claimant suffered from CRPS, and disagreed that certain tests were needed to measure sensitivity and temperature changes in Claimant's legs to confirm the CRPS diagnosis. Dr. Helm opined that because his CRPS symptoms waxed and waned, Claimant was not fully recovered and could not work. WCJ's Opinion at 13-15.

Claimant also presented the IME report from Dr. D'Agostino. Dr. D'Agostino reported on Claimant's medical history, the successful implantation of the spinal cord stimulator in 2018, and his recommendations to reprogram the spinal cord stimulator as needed. When he saw Claimant on December 10, 2019, Dr. D'Agostino reported that Claimant complained of pain of a level of 8 out of 10, low back pain, and sensitivity and pain in his legs. Dr. D'Agostino diagnosed Claimant with CRPS type I in both legs and with failed back pain syndrome. Dr. D'Agostino

7

noted that the spinal cord stimulator was helpful to Claimant for about six months, but that it was no longer producing any benefit. Dr. D'Agostino released Claimant to part-time, light-duty work at the level of 20 hours per week, with no lifting of more than 10 pounds, and no operating heavy machinery. WCJ's Opinion at 15-16.

Claimant also submitted the report of Dr. Vincent Ferrera, who provided a Utilization Review Report (UR Report) dated May 16, 2018, regarding the prospective use of a spinal cord stimulator recommended by Dr. Buchholz. The UR Report diagnosed Claimant with lumbar stenosis and noted that a spinal cord stimulator was justified for an individual who had two spinal surgeries. The UR Report also noted that Claimant had not been officially diagnosed yet with RSD/CRPS, and that such a diagnosis would support a spinal cord stimulator. The UR Report also noted that a spinal cord stimulator would be appropriate only after a successful trial. WCJ's Opinion at 16. Claimant also submitted medical bills and denial of payment for a spinal cord stimulator, billed by a hospital in South Carolina, with a service date of March 10, 2016, as well as a bill for the successful implantation in 2018. WCJ's Opinion at 16.

Employer presented three IME reports and deposition testimony of Dr. Kramer. In the first report dated March 8, 2016, Dr. Kramer recounted Claimant's work injury, the first spinal surgery, and Claimant's pain sensations in his left leg. Dr. Kramer's diagnosis at that time was lumbar strain and aggravation of preexisting lumbar spondylolisthesis at L5-S1. Dr. Kramer reported that Claimant was not fully recovered and had ongoing complaints of pain. At that time, Dr. Kramer released Claimant to full-time, light-duty work. Dr. Kramer next evaluated Claimant on June 30, 2017, at which time Claimant reported mottling and pain in his legs. Dr. Kramer opined that Claimant had reached maximum medical improvement, and he

8

recommended a repeat electromyography (EMG) test along with a Quantitative Sudomotor Axon Reflect Test (QSART), which are designed to provide objective evidence of CRPS by measuring nerve response and sweat response, respectively, in the affected area. Dr. Kramer observed that surveillance of Claimant by Employer contradicted Claimant's low back complaints and reported incapacities. At that time, Dr. Kramer again released Claimant to full-time, light-duty work. Dr. Kramer saw Claimant a third time, on February 28, 2018. Dr. Kramer reported that, in the interim, Claimant had undergone a second spinal surgery to repair the broken screws, and he had a successful spinal cord stimulator implantation on an inpatient basis. Dr. Kramer did not observe any discoloration on Claimant's legs during this exam. Dr. Kramer found no clinical abnormalities to support a diagnosis of RSD/CRPS at that time, because, in his opinion, RSD/CRPS does not wax and wane, and Claimant had no objective test results to confirm the diagnosis of RSD/CRPS. Dr. Kramer opined that Claimant did not have a clear-cut case of RSD/CRPS, and the surveillance of Claimant, which showed him doing yard work and wearing shoes, was inconsistent with a diagnosis of RSD/CRPS. Dr. Kramer disagreed that a spinal cord stimulator was reasonable and necessary in this case. Dr. Kramer agreed with Dr. Buchholz's diagnosis of pseudoarthritis, which is typically why screws break after spinal surgery. Dr. Kramer agreed that both spinal surgeries were related to the work injury. Dr. Kramer opined that Claimant's restrictions following surgery would usually be sedentary duty for four to six weeks, and release to light duty after three months. Dr. Kramer based his restrictions on Claimant's spinal conditions and not on RSD/CRPS. Dr. Kramer approved the job descriptions sent by Mr. DeMartino in 2017. WCJ's Opinion at 5-7.

9

Employer also presented testimony and reports from Mr. DeMartino, its vocational rehabilitation consultant. Mr. DeMartino testified that he has been approved by the Commonwealth as a vocational rehabilitation consultant, and that his work typically involves vocational assessment, vocational testing, and establishing earning power for claimants. Mr. DeMartino testified that he reviews a claimant's medical documentation and work history, determines whether a suitable job is available with the employer, and meets with the claimant to assess capacities and background information. He then looks for open jobs by reviewing online and other sources, visits job sites to obtain details about open jobs, and refers the jobs to the claimant. Mr. DeMartino was assigned Claimant's file to conduct an LMS in early 2017. Mr. DeMartino confirmed with Employer that no job was available for Claimant within his restrictions. He conducted a vocational interview with Claimant and his counsel by telephone, and he determined that Claimant had the ability to use a computer and phone, as Claimant did so at home. He determined that Claimant was a high school graduate with no learning disorders or problems with reading and writing. He also determined that Claimant had experience with a prior employer, UniFirst, where he had done some minor bookkeeping and financial work, as well as supervision of drivers and collecting payments, among other duties. Mr. DeMartino assessed that Claimant had above average skills in general learning, a little above average skill in perception, and average skills in clerical, motor, and finger dexterity. Mr. DeMartino relied on Dr. Kramer's light-duty work restrictions for Claimant. On June 23, 2017, Mr. DeMartino found positions at Home Depot, Point Security, Miller Brothers Staffing, and UPMC. On August 9, 2017, Mr. DeMartino found four more positions with Fostermation, KwikFill, Walgreens, and

10

as a customer service representative with UniFirst.[7]  These jobs were located near Meadville and Greenville, Pennsylvania, near the site of Claimant's work injury.[8] Mr. DeMartino sent these job descriptions to Dr. Kramer for approval, and Dr. Kramer approved them.  Mr. DeMartino then prepared an earning power assessment that summarized his research and listed the eight jobs he believed were available to Claimant within his work restrictions.[9]  With respect to the customer service position at UniFirst, Mr. DeMartino testified that UniFirst informed him the position was full time at a rate of $12.00 per hour.  However, he acknowledged that UniFirst's response to Claimant's subpoena indicated that the job was for 30 hours per week at a rate of $10.00 per hour.  Mr. DeMartino further testified that the UniFirst position was an entry-level position, which required data entry and office work, the position was open when he notified Claimant, and it was filled on August 27, 2017.[10]  WCJ's Opinion at 8-9.

Employer also presented testimony, reports, and video from Mr. Harty, the private investigator employed by the Robison Group, that was hired by Employer to conduct surveillance of Claimant.  Mr. Harty testified that he conducted

[7] Mr. DeMartino's correspondence about available jobs may be found in the Certified Record, Item No. 57.

[8] *See Riddle v. Workers' Compensation Appeal Board (Allegheny City Electric, Inc.)*, 981 A.2d 1288 (Pa. 2009), which held that when developing an LMS for a claimant, an employer must focus its job availability analysis on the area where the injury occurred and not where the claimant currently resides.  Neither party disputes that Mr. DeMartino was required to search for available jobs in Pennsylvania near where Claimant's injury occurred, rather than in South Carolina where Claimant now resides.

[9] Mr. DeMartino's earning power assessment may be found in the Certified Record, Item No. 58.

[10] Because the Modification Petition was granted based only on the UniFirst position, we need not discuss further the details about the other seven positions identified in the LMS.

11

surveillance of Claimant on April 10 and April 11, 2017, during which he observed Claimant doing lawn work at his home, driving his truck to do errands, shopping with a cart at Walmart, removing trash bags from the back of his truck and depositing them in a waste authority receptacle, and fishing with his son. Mr. Harty testified that he did not see Claimant use any assistive devices to walk, did not see Claimant limping, and did not see any discoloration on Claimant's legs, and he saw Claimant wearing only flip flops and shorts. WCJ's Opinion at 9. Employer offered video surveillance performed by the Robison Group on July 27, 2018, which showed Claimant walking for a brief period of time. Employer also offered video surveillance from September 26 and September 27, 2020, which showed Claimant walking his dog and wearing what appears to be tennis shoes or sneakers. *Id.* at 16-17.

The WCJ then made the following findings relevant to the Modification Petition and the Penalty Petition. The WCJ found Claimant's testimony to be credible in part and not credible in part. The WCJ found Claimant credible regarding his injury, treatment, social media presence, ability to perform limited yardwork, and his complaints about mottling and sensitivity in his legs. The WCJ found Claimant not credible regarding the extent of his disability, his claimed inability to walk more than one-half mile, his reasons for not returning to work, and his inability to only minimally wear shoes other than flip flops. WCJ's Opinion at 17, Finding of Fact (F.F.) 22.

The WCJ found Dr. Buchholz's medical opinions to be credible, to establish Claimant's diagnoses and work capacities. The WCJ found Dr. Buchholz's observations of Claimant's skin discoloration and mottling to be credible. WCJ's Opinion at 18, F.F. 26.

12

The WCJ found Dr. Helm's testimony credible and convincing in part and not credible in part. The WCJ found credible Dr. Helm's opinion that Claimant "has developed CRPS," based on his rational explanation and his own observation of mottling and temperature differences on Claimant's legs. The WCJ credited Dr. Helm's opinion that symptoms of CRPS can vary. The WCJ credited Dr. Helm's opinion that Claimant was properly treated with a spinal cord stimulator, the treatment gave Claimant some improvement for a while, and the treatment was reasonable. The WCJ rejected as not credible Dr. Helm's opinion that Claimant needed to wear flip flops, which was contradicted by surveillance and Claimant's admission in 2020 that he sometimes wears shoes. The WCJ rejected Dr. Helm's opinion that Claimant was totally disabled and could not work. The WCJ rejected Dr. Helm's opinion of Claimant's work capacity "to the extent they suggest total disability, or they contradict those of Dr. Kramer in terms of ability to perform the UniFirst or Miller Brothers jobs." WCJ's Opinion at 17-18, F.F. 24.

The WCJ found the evidence of Dr. D'Agostino corroborative of Claimant's medical evidence regarding the presence of CRPS, but he "did not rely on this report regarding the CRPS diagnosis," instead relying on the opinions of Claimant's treating physicians for the CRPS diagnosis. WCJ's Opinion at 18, F.F. 28. The WCJ also found credible the opinions of Dr. Ferrara, who provided the UR Report, and opined that the spinal cord stimulator provided by Dr. Buchholz, "and no other physician" would be reasonable after a successful trial. *Id.* at 18-19, F.F. 29.

The WCJ found the testimony and opinions of Employer's medical expert, Dr. Kramer, credible and convincing in part, and not credible in part. The WCJ found credible in large part Dr. Kramer's opinion regarding Claimant's light-

13

duty work restrictions, specifically crediting Dr. Kramer's opinion that Claimant could perform the UniFirst job and the Miller Brothers job, if that position had remained open.[11] The WCJ credited Dr. Kramer's opinion that Claimant suffered from pseudoarthritis and an aggravation of preexisting lumbar spondylolisthesis, both of which were consistent with Dr. Buchholz's opinion, and that both of Claimant's back surgeries were related to his work injury. The WCJ found Dr. Kramer not credible in his opinion that Claimant "did not have some degree of CRPS." The WCJ found Dr. Kramer's opinion not credible regarding the use of the spinal cord stimulator, given that back issues and CRPS could both justify this treatment. The WCJ noted that Dr. Kramer "credibly addressed" Claimant's alleged inability to wear anything but flip flops in that Dr. Kramer "did not find that allegation to be credible, nor does this Judge." WCJ's Opinion at 17, F.F. 23.

The WCJ found the testimony of Mr. DeMartino credible in part. The WCJ credited Mr. DeMartino's testimony regarding Employer's lack of a suitable job, the interview with Claimant, his assessment of Claimant's skills, and his manner of performing the LMS. The WCJ found Mr. DeMartino "generally credible regarding the duties of the Miller Brothers and Uni[F]irst positions." The WCJ found Mr. DeMartino's testimony not credible to the extent that it conflicted with the information subpoenaed from the potential employers. WCJ's Opinion at 18, F.F. 25. Specifically, regarding the UniFirst position, the WCJ found in relevant part as follows:

_____

[11] Mr. DeMartino testified that the customer service representative position at Miller Brothers was filled three days after he identified it, so the WCJ ultimately determined that the Miller Brothers job was not available to Claimant. WCJ's Opinion at 18, F.F. 27. The WCJ found Dr. Kramer's testimony regarding Claimant's lifting, walking, and standing abilities to be not credible. Therefore, the WCJ ultimately found that the remaining six jobs identified by Mr. DeMartino were not suitable for Claimant because of the physical requirements. WCJ's Opinion at 18, F.F. 25.

14

27. The position at UniFirst however seems to be suitable to Claimant, and this job was available. Claimant was able to perform this job until October 2, 2017, when Dr. Buchholz performed surgery to deal with the fractured screws. Dr. Buchholz credibly stated that Claimant would be able to perform light duty with lifting of 25 pounds a month after surgery. Thus, Claimant would have had a month after surgery during which he could do the jobs in question. [Employer] is entitled to a modification to partial disability based on the potential earnings of $300 per week, which is derived from $10 per hour for 30 hours per week, as stated in the subpoena response.

28. This Judge notes that the UniFirst job appears to be within the [physical] restrictions given.

WCJ's Opinion at 18, F.F. 27 and 28.

The WCJ found the testimony of Mr. Harty to be credible, but of little value, except for Claimant's "wearing of shoes instead of sandals or flip flops." The surveillance videos were very brief and showed Claimant doing small bursts of activity, which was consistent with Claimant's testimony. WCJ's Opinion at 19, F.F. 30.

As to the issue of the Penalty Petition and the spinal cord stimulator, the WCJ found that Employer did not submit the treatment of Dr. Helm or Dr. Roland for UR, but instead submitted the treatment of Dr. Buchholz for UR, even though Dr. Buchholz did not perform the spinal cord implantation. Therefore, the WCJ found that the spinal cord treatment was not subject to UR, and Employer was wrong for denying payment on that basis. The WCJ found that, "[i]n the end, this [WCJ] finds that [Employer] had no basis to reject medical billing as being subject to [UR] when it actually was not. Upon receipt of proper billing and records for same, and proof that it was related to the accepted injury, [Employer] was under

15

obligation to make timely payment." WCJ's Opinion at 19, F.F. 31. The WCJ continued:

> Based on a thorough review of the evidence and testimony of record, this [WCJ] finds that the injury as accepted did not include specific diagnos[is] of RSD/CRPS. Claimant filed [Review Petitions] to expand the injury. At the time of attempted trial and implantation of the spinal cord stimulator, the recognized injury did not include RS[D], or aggravation of preexisting lumbar spondylolisthesis. Under these circumstances, the medical billing was not due for payment as it pertained to conditions not accepted as part of the recognized injury. This decision will find these diagnoses related to the injury, and [Employer's] obligation commences with this final Order.

*Id.*, F.F. 32.

The WCJ then concluded that Employer met its burden on the Modification Petition by establishing that work was available within Claimant's capacity to perform the UniFirst position as of August 8, 2017, and the WCJ modified the partial disability rate to $262.98 per week based on the wages credited as available from the UniFirst position. The WCJ reinstated Claimant's total disability benefits from October 2, 2017, through November 1, 2017, based on Claimant's second spinal surgery and his recovery from that surgery, and awarded partial disability payments from November 2, 2017, forward. WCJ's Opinion at 19-20, Conclusion of Law (C.L.) 2.

The WCJ concluded that Claimant met the burden of his Review Petitions in part, and now defined Claimant's injury to include aggravation of lumbar spondylolisthesis and CRPS. The WCJ concluded that Employer would be responsible for reasonable and necessary treatment for those conditions, including the spinal cord stimulator, going forward. WCJ's Opinion at 20, C.L. 3.

16

The WCJ also concluded that "Claimant has not met the burden of proof for the Penalty Petition, where the treatment that is the subject of the petition [the spinal cord stimulator] is for diagnoses which were, until now, not part of the recognized injury." WCJ's Opinion at 20, C.L. 4.

Claimant and Employer both appealed to the Board. Neither party appealed the WCJ's grant of Claimant's Review Petitions which expanded the description of Claimant's injuries effective with the date of the WCJ's Opinion and going forward. The Board opined that Employer met its burden for the Modification Petition based on the credited testimony of Dr. Buchholz, Dr. Kramer, and Mr. DeMartino, and the rejection of Dr. Helm's testimony on that issue, based on the WCJ's finding that the UniFirst position was available to Claimant and within his work capacities. Board Opinion at 11. As to the Penalty Petition, the Board concluded that Claimant did not meet his burden to prove that Employer's denial of payment was a violation of the Act, because the disputed treatment was for diagnoses that were not a part of Claimant's recognized injury at the time the Penalty Petition was filed. *Id.* at 12. "At the time Claimant filed the Penalty Petition for [Employer's] failure to preauthorize the implantation of a spinal cord stimulator, the accepted injury was only a low back strain." *Id.* Employer was "only obligated to pay for the spinal cord stimulator once the WCJ determined that the work injury included C[RP]S/RSD and an aggravation of lumbar spondylolisthesis." *Id.* The Board found no error in the WCJ's Opinion and affirmed. Claimant then petitioned this Court for review.[12]

---

[12] Our review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314, 1318 n.4 (Pa. Cmwlth. 1996).

The following statutory and case law will assist in our analysis. As we review the issues presented by Claimant, we are mindful that in workers' compensation cases, "the WCJ is the ultimate fact-finder who must determine credibility and evidentiary weight. In this role, the WCJ freely evaluates the evidence offered and can accept or reject any witness'[s] testimony, **in whole or in part,** including that of medical witnesses." *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa. Cmwlth. 2000) (emphasis added). As we further stated, "[w]hile this Court can and should consider the competency and sufficiency of evidence presented before a WCJ, the WCJ's assessment of witness credibility is not subject to our review on appeal." *Id.* Furthermore, in a substantial evidence analysis where, as here, both parties presented evidence, "it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ, rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding." *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

This Court "may overturn a credibility determination only if it is arbitrary and capricious, so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *West Penn Allegheny Health System, Inc. v. Workers' Compensation Appeal Board (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (citation omitted.). Finally, we must review the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. *Id.* at 475.

18

As to the Modification Petition, a WCJ may modify a claimant's benefits when a claimant's disability has ended or decreased pursuant to Section 413(a) of the Act, 77 P.S. §772. Under Section 306(b)(2) of the Act, 77 P.S. §512(2), an employer may seek to modify a claimant's benefits by (1) offering the claimant a specific job he is capable of performing, or (2) establishing an earning power through expert opinion evidence, based on job listings with specific agencies of the department, private job placement agencies, and advertisements in the usual employment area. *Kleinhagan v. Workers' Compensation Appeal Board (KNIF Flexpak Corp.)*, 993 A.2d 1269, 1275 (Pa. Cmwlth. 2010). Section 306(b)(2) of the Act also provides that partial disability shall apply if the claimant "is able to perform his previous work or can, considering the [claimant's] residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists" in the area where the claimant lives in Pennsylvania, or where the injury occurred if the claimant lives outside Pennsylvania. 77 P.S. §512(2).

In *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*, 81 A.3d 830 (Pa. 2013), our Supreme Court considered whether a claimant's benefits could be modified under Section 306(b)(2) of the Act, when the claimant applied for specific, recommended jobs but failed to receive an offer of employment. In *Shoap*, the employer sought to modify the claimant's benefits based on two LMSs that provided jobs within the claimant's physical restrictions in the relevant geographical area. *Shoap*, 81 A.3d at 833. The Court interpreted "substantial gainful employment which exists" in Section 306(b)(2) of the Act to require proof of the "existence of meaningful employment opportunities, and not the simple identification of jobs found in want ads or employment listings." *Id.* at 842-

19

43. The Court held that "substantial gainful employment which exists" must also encompass more than the mere existence of jobs compatible with the claimant's experience that are open at the time the LMS is prepared, and that such jobs must "remain open until such time as the claimant is afforded a reasonable opportunity to apply for them." *Id.* at 845. The Court also held that a claimant must have latitude to present evidence about his or her experience in applying for identified jobs because it may provide relevant evidence that a job is incompatible with the claimant's skills, education, and experience. *Id.* at 844. The Court explained that "[e]vidence that the claimant pursued but failed to obtain gainful employment" with the identified employers was "undeniably relevant to rebut the employer's argument that the positions identified were proof of the potentiality of a claimant's substantial gainful employment. However, such evidence is, of course, not dispositive of the earning power inquiry." *Id.* at 846. The Court further stated that the claimant must be afforded the opportunity to present evidence that he or she did not obtain employment because the position "was already filled by the time the claimant had had a reasonable opportunity to apply for it." *Id.* Because the claimant was not afforded the opportunity to fully present evidence regarding her experiences in applying for the specified jobs, the Supreme Court reversed this Court and remanded the matter so that the claimant could present such evidence. *Id.*

In *Valenta v. Workers' Compensation Appeal Board (Abington Manor Nursing Home and Rehab and Liberty Insurance Co.)*, 176 A.3d 374 (Pa. Cmwlth. 2017), we considered whether the Board erred in affirming the WCJ's decision granting the employer's petition to modify the claimant's benefits based on an LMS. Our Court reviewed *Shoap*, applied it to the facts presented, and determined that modification was appropriate because the claimant had a reasonable opportunity to

20

apply for two positions, which remained open for 25-27 days after she received the LMS, even though she was not offered any position. *Valenta*, 176 A.3d at 386-87.

In *Smith v. Workers' Compensation Appeal Board (Supervalu Holdings Pa, LLC)*, 177 A.3d 394, 404 (Pa. Cmwlth. 2018), our Court confirmed that modification of benefits based on earning power associated with identified jobs cannot be granted "without evidence in the record that the specific positions remain open until such time as a claimant is afforded a reasonable opportunity to apply for them." We determined that evidence the identified jobs were available must be established by the employer, but that, "if a claimant offers evidence about her experience in pursuing the jobs identified in a[n LMS], that evidence can be considered on the issue." *Id.* at 404. The Court agreed that evidence the claimant "was interviewed for some identified positions constitutes substantial evidence that those positions remained open and available." *Id.* The Court affirmed the granting of the modification petition based on the claimant's ability to interview for two positions, even though she was not offered any jobs. *Id.*

As to the Penalty Petition, Section 435(d) of the Act, 77 P.S. §991(d),[13] gives the WCJ or the Board discretion to impose penalties for violations of the Act. A claimant who files a penalty petition must first meet his burden to prove that a violation of the Act occurred. Then, the burden shifts to the employer to prove that it did not violate the Act. "The decision to impose penalties as well as the amount of penalties is within the discretion of the WCJ." *City of Philadelphia v. Workers' Compensation Appeal Board (Andrews)*, 948 A.2d 221, 229 (Pa. Cmwlth. 2008) (citations omitted). The WCJ's decision regarding a penalty petition will not be disturbed on appeal unless the WCJ abused his discretion. *Id.* at 229. No penalty

---

[13] Added by the Act of February 8, 1972, P.L. 25.

21

may be imposed unless a violation of the Act is in the record. *Communication Test Design v. Workers' Compensation Appeal Board (Simpson)*, 229 A.3d 994, 998 (Pa. Cmwlth. 2020).

As to the Modification Petition, although Claimant frames the question as whether the WCJ erred, his arguments are focused on whether substantial evidence in the record supports the WCJ's findings. Claimant argues that Dr. Kramer's opinion as to his restrictions are equivocal or incompetent because the WCJ rejected Dr. Kramer's opinion that Claimant did not suffer from RSD/CRPS. Claimant argues that because Dr. Kramer's opinion that Claimant could perform light-duty work was based only on his spinal condition and did not account for his untreated RSD/CRPS, the UniFirst position was not in fact available or appropriate to determine Claimant's earning capacity. Claimant argues that because neither Dr. Kramer nor Dr. Buchholz addressed the impact of Claimant's CRPS on his ability to work, their opinions were equivocal and could not support a finding that the UniFirst position was actually available to Claimant. Claimant argues that the opinions of Dr. Kramer and Dr. Buchholz are rendered incompetent because they failed to account for the entirety of Claimant's work injury. Employer responds that the WCJ credited the testimony of both Dr. Kramer and Dr. Buchholz, in part, to establish that Claimant was capable of light-duty work, including the UniFirst position. Employer responds that although the WCJ credited the opinion of Dr. Helm that Claimant has RSD/CRPS, he rejected Dr. Helm's opinion that Claimant's RSD/CRPS rendered Claimant unable to work at all.

As to the Penalty Petition, Claimant argues that the WCJ erred when he concluded that Claimant failed to meet his burden to prove that Employer violated the Act when it refused to pay for Claimant's spinal cord stimulator. Claimant

22

emphasizes that the WCJ found that Employer had no basis to deny payment based on the UR, and that the spinal cord stimulator was found to be reasonable to treat Claimant's back injury. Employer responds that it denied payment for the spinal cord stimulator because the treatment was not causally related to Claimant's low back strain, which was the accepted injury at the time.

After careful consideration, we affirm the Board on both the granting of Employer's Modification Petition, and the denial of Claimant's Penalty Petition. As to the Modification Petition, Claimant's argument that the opinions of Dr. Kramer and Dr. Helm are equivocal or incompetent because they failed to account for Claimant's RSD/CRPS when they approved him for light-duty work, including the UniFirst position, are misplaced. Claimant was successful in expanding Claimant's accepted injury to include aggravation of preexisting lumbar spondylolisthesis and RSD/CRPS, and Claimant, of course, did not appeal the WCJ's grant of his Review Petitions. However, Claimant fails to account for the entirety of the WCJ's conclusion which states, "[t]he injury is *now defined to include* aggravation of lumbar spondylolisthesis and [RSD/CRPS]." WCJ's Opinion at 20, C.L. 3 (emphasis added). The expansion of Claimant's work injury to include RSD/CRPS became effective as of the date the WCJ granted Claimant's Review Petitions but is not applicable to earlier dates when Claimant believes he had RSD/CRPS symptoms. Thus, although Claimant argues that his job limitations in 2017 should have accounted for his undiagnosed RSD/CRPS, the WCJ disagreed, and his findings were supported by substantial evidence in the record. The WCJ is free to credit testimony in whole or in part, including medical testimony. *Davis*, 753 A.2d at 909. "While this Court can and should consider the competency and

23

sufficiency of evidence presented before a WCJ, the WCJ's assessment of witness credibility is not subject to our review on appeal." *Id.*

Claimant's argument on the Penalty Petition fails for a similar reason. When Employer denied payment for the spinal cord stimulator, aggravation of lumbar spondylolisthesis and RSD/CRPS were not part of Claimant's recognized work injury. Those additional diagnoses became part of Claimant's recognized injury only when the WCJ granted Claimant's Review Petitions. The WCJ concluded that Claimant failed to meet his burden on the Penalty Petitions, "where the treatment that is the subject of the petition is for diagnoses which were, until now, not part of the recognized injury." WCJ's Opinion at 20, C.L. 4. We discern no error or abuse of discretion in the Board's conclusion that "[Employer] was only obligated to pay for the spinal cord stimulator once the WCJ determined that the work injury included [RSD/CRPS] and an aggravation of lumbar spondylolisthesis." Board Opinion at 12. Because Claimant failed to prove that Employer violated the Act, the WCJ's decision to deny the Penalty Petition is affirmed. *Communication Test Design*, 229 A.3d at 998.

Accordingly, we affirm the Board's order.

MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

24

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Wygant,                :
                                 :
               Petitioner     :
                                 :
           v.                  : No. 546 C.D. 2022
                                 :
Kebert Construction (Workers'      :
Compensation Appeal Board),       :
                                 :
            Respondent : 

# **O R D E R**

AND NOW, this 29th day of January, 2024, the order of the Workers' Compensation Appeal Board dated May 6, 2022, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge